UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 15 |
| Asbestos Corporation Limited,[1] | ) Case No. 25-_____ ( ) |
| Debtor in Foreign Proceeding. | ) |

**DECLARATION OF ALAIN N. TARDIF AS CANADIAN COUNSEL IN SUPPORT OF THE DEBTOR'S CHAPTER 15 PETITION AND FIRST DAY PLEADINGS**

I, Alain N. Tardif, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a partner in the Bankruptcy and Restructuring Group at the Canadian law firm of McCarthy Tétrault LLP ("**McCarthy**") located at 1000 De La Gauchetière Street, West, Suite MZ400, Montréal QC H3B 0A2, Canada. McCarthy is acting as Canadian counsel to Raymond Chabot Inc. ("**RCI**") in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "**Petitioner**") of the debtor Asbestos Corporation Limited (the "**Debtor**" or **ACL**") in the above-captioned case and in the Canadian proceeding (the "**Canadian Proceeding**") commenced under the Companies' Creditors Arrangement Act, R.S.C. 1985 c. C-36, as amended (the "**CCAA**") before the Superior Court of Justice in Québec, Canada (the "**Canadian Court**").

2. I am an individual over 21 years of age and am competent to testify and to provide this declaration (the "**Declaration**") in support of (i) the Verified Petition for Recognition of Foreign Proceeding under Chapter 15 (the "**Verified Petition**")[2], which seeks entry of an order

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Asbestos Corporation Limited (Canadian Federal Business Number: 104903273RC0001). The Debtor has a registered and business address in Canada of 840 Boul. Ouellet, Thetford Mines, QC G6G 7A5, Canada.

[2] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Verified Petition.

1

granting recognition of (a) the Canadian Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding and (c) certain related relief, and (ii) the Motion for a Provisional Relief pursuant to sections 105, 1519, 1521(a)(7), and 362 of the Bankruptcy Code, both of which were concurrently filed herewith.

**I.    Professional Background and Qualifications**

3.     I earned my LL.B from the Université de Montréal in 1989 and my BCL from the University of British Columbia in 1991. I was admitted to the Québec Bar in 1992.

4.     I have extensive experience in the field of Canadian corporate reorganization and insolvency law, advising debtor corporations and large corporate groups, lenders, bondholders and other creditors, court-appointed officers (e.g., CCAA monitors), investors, and acquirers in Canadian proceedings commenced under the CCAA, receivership, bankruptcy, as well as under federal and provincial corporate and/or insolvency legislation in both Canadian and international contexts. My expertise in Canadian restructuring law is recognized by a variety of different organizations, including Chambers Canada where I am considered a "Leading Lawyer" in the restructuring and insolvency practice area.

5.     I lecture at the Faculty of Law of the Université de Montréal on the subject of commercial restructuring. I am a member of the Canadian Turnaround Management Association, the American Bankruptcy Institute and INSOL International. I have sat on the committee for the accreditation of bankruptcy trustees and served as president of the Canadian Bar Association, Bankruptcy and Insolvency Division (Québec chapter). I have been a consultant for the World Bank Group for over 10 years and I am a member of the Insolvency & Creditor/Debtor Regimes (ICR) Task Force *Institutional Consultative Group* of the World Bank Group.

6.     Although I am not admitted to practice law in the United States, I am generally familiar with recognition proceedings arising under Chapter 15 of the Bankruptcy Code as a

consequence of my involvement with other Canadian restructurings involving companies that have required recognition proceedings under Chapter 15 of the Bankruptcy Code.

## II. The Canadian Proceeding

7.      As explained in detail in the *Declaration of Ayman Chaaban Pursuant to 28 U.S.C. § 1746* (the "**Chaaban Declaration**"), on May 6, 2025, a number of insurers ("**CLMI**"),[3] as ACL's insurers and/or creditors and with the consent and cooperation of the Debtor (together with CLMI, the "**Applicants**"), filed an application with the Canadian Court pursuant to section 11.02 of the CCAA. The CCAA is a Canadian statute that governs corporate insolvencies and provides for the reorganization of a company's financial obligations. On that date, the Canadian Court signed an initial order (as may be amended and restated from time to time, the "**Initial CCAA Order**") which, among other things:

a) appointed RCI as monitor within the Canadian Proceeding (in such capacity, the "**Monitor**");

b) authorized RCI to act as representative ("**Foreign Representative**") in respect of the Canadian Proceeding for the purposes of having such proceeding recognized in a jurisdiction outside of Canada, including acting as a Foreign Representative of the Debtor to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the Bankruptcy Code;

c) declares that Debtor's center of main interest (COMI) is in Québec, Canada;

---

[3] The insurers that initiated the Canadian Proceeding are Certain Underwriters at Lloyd's, London, Tenecom Limited (as successor to Winterthur Swiss Insurance Company, formerly known as Accident & Casualty Insurance Company of Winterthur, Switzerland, and to Yasuda Fire and Marine Insurance Company (UK) Limited and now known as Tenecom Limited), The Ocean Marine Insurance Company (as successor to liabilities of Commercial Union Assurance Company Limited, The Edinburgh Assurance Company, The Indemnity Marine Assurance Company Limited, The Northern Assurance Company Limited, The Road Transport & General Insurance Company Limited, United Scottish Insurance Company Limited, and The Victoria Insurance Company Limited), NRG Victory Reinsurance Limited, as successor to liabilities of New London Reinsurance Company Limited and The Scottish Lion Insurance Company Limited.

3

d) provides for a stay of proceedings or the exercise of rights or remedies against the Debtor, its Directors and Officers, from May 6, 2025 through and including May 16, 2025 (the "**Initial Stay Period**");

e) extends the stay to non-debtors CLMI, including their third-party claims administrator Resolute Management Inc., and former indirect majority owner General Dynamics Corporation ("**General Dynamics**") through the Initial Stay Period;

f) ordered that the Debtor remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever, including all proceeds thereof, all bank accounts and all insurance assets, wherever they may be located, including in the United States, subject to the powers the Initial CCAA Order simultaneously granted to the Monitor; and

g) prohibits parties from discontinuing, failing to renew per the same terms and conditions, failing to honor, alter, interfere with, repudiate, terminate, or cease to perform any right in favor of or held by the Debtor.

### III. Overview of the CCAA Restructuring Process

8. The CCAA provides for a court-supervised reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

9. A proceeding under the CCAA is an insolvency proceeding in which a debtor may ultimately reorganize or liquidate its business and distribute proceeds to creditors, typically pursuant to a plan or distribution order, and under court supervision. A debtor's assets and affairs are subject to the supervision of the Canadian court and of the court-appointed monitor during the pendency of a proceeding commenced under the CCAA. Creditors, including unsecured creditors, of a debtor may make an application to the Canadian court for an initial order under the CCAA.

10. In a proceeding under the CCAA a debtor's management and board of directors may remain in place, with the board maintaining its power under Canadian law to approve applicable significant actions, such as disposing of substantial assets, borrowing, or changing corporate structures, subject to oversight by a court-appointed monitor and specific approval of the court.

11. Canadian courts have recognized that creditors, including unsecured creditors, have standing to commence proceedings in respect of a debtor company under the CCAA and have authorized the initiation of such proceedings on numerous occasions, including where there are concerns regarding the capabilities of the debtor company or its management to effectively operate and where the actions of the debtor company are prejudicial to its stakeholders.

12. The commencement of proceedings under the CCAA has also been regarded as a proper exercise of stakeholder rights where such proceedings are instituted with a view to benefiting the mass of the debtor company's stakeholders. Canadian courts have allowed interested persons to bring CCAA applications to seek protection under the CCAA on behalf of a debtor company, with some recent cases even allowing equity investors to commence proceedings under the CCAA as against the debtor company for the purpose of instituting a claims process in the interests of the mass of stakeholders.

13. The CCAA process begins with the filing of an initial application—often on an *ex parte* basis—in the court in the jurisdiction where the company's headquarters or principal place of business is situated for protection under the CCAA. The initial application must, inter alia, be accompanied by: (a) projected weekly cash flow statements; (b) a statement regarding the preparation of the cash-flow statements; and (c) copies of all audited or unaudited financial statements prepared during the year prior to the application. *See* CCAA at 10(2).

14. It is also customary for the proposed court-appointed monitor to submit to the court a pre-filing report to guide the supervisory judge.

15. Upon the filing of the initial application, the court may enter an order staying all proceedings and actions against the debtor company and its property as well as against its directors and officers for an initial period that does not exceed 10 days. *See* CCAA at 11.02(1). This period may subsequently, from time to time, be extended by the CCAA court for the period of time required to implement a CCAA restructuring. The initial order and any subsequent amendment and restatement thereof, may also include, among other things, (a) authority to disclaim certain contracts; (b) a prohibition on the payment of pre-filing obligations, subject to certain permitted exceptions; (c) authority to pay any outstanding wages, salaries, employee and pension benefits, as well as other entitlements and expenses; (d) an order to pay certain taxes; and (e) a prohibition on sales outside the ordinary course of business without court approval, unless certain exceptions apply. *See* CCAA at 11.09 (2).

16. Upon the entering of an initial order granting the initial application, all actions against the debtor and its assets are stayed, wherever located (similar to the Bankruptcy Code's automatic stay). The initial stay is first granted for a maximum period of 10 days. The relief granted by the court within such 10-day timeframe is required to be limited to relief that is reasonably necessary for the continued operations of the debtor company in the ordinary course of business. The initial stay period is typically extended where the debtor can show it continues to act with good faith and due diligence. There is no limit on the number or duration of these extensions of the stay. As of the date hereof, the Initial Stay Period is in effect until and including May 16, 2025.

17. Upon the commencement of a proceeding under the CCAA, the court will appoint a qualified monitor, who functions as an independent court officer and observer of the Canadian

6

Proceeding and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company or that may prejudice its stakeholders, (iii) examine every claim and the grounds therefore, determine whether a claim is a provable claim, value or disallow any claim, such determination being subject to an appeal, (iv) notifies the company's creditors of any meetings and tabulates votes at these meetings, if held, (v) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (vi) approves the disclaimer of contracts and leases, (vii) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (viii) prepares a report on the plan of arrangement, if one is filed, and on any sale transaction involving an insolvent debtor's assets conducted out of the ordinary course. The monitor acts as the "eyes and ears of the court." Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor, its creditors and/or the stakeholders . Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions.

18.     As is the case in the United States chapter 11 process, the company will usually continue to operate during a proceeding commenced under the CCAA, and it may also avail itself of restructuring measures (such as the disclaimer of onerous executory contracts) with a view to enhance the prospects of bringing forward a successful Plan of Arrangement or other restructuring transaction.

19.     In a proceeding commenced under the CCAA, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are

7

not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the Canadian Proceeding.

20. For a plan of arrangement to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, may approve of said plan presented to them. If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the court's approval of the plan. If all of the classes of creditors approve the plan, the court must then sanction the plan as a final step. Upon court approval, the company continues forward as outlined under the plan until it has satisfied the requirements under the plan.

21. A plan of arrangement is one of the possible outcomes of a process under the CCAA. A variety of other outcomes are possible. These include a sale of assets or shares, or other restructuring transaction, effected with court approval but in the absence of a plan of arrangement.

22. Throughout a proceeding commenced under the CCAA, the court retains broad discretion to "make any order that it considers appropriate in the circumstances."

**IV. The Canadian Proceeding Provides an Efficient Forum for Resolving ACL's Liabilities.**

23. The CCAA is a statutory framework that provides for a court-supervised reorganization procedure that is judicial in character. Proceedings under the CCAA are collective in nature, as the CCAA provides that parties in interest may appear, be heard and weigh in on significant events in a CCAA proceeding. Additionally, the Canadian Court's consideration of creditor rights is reflected in the fact that the Canadian Orders provide for a temporary stay of proceedings against the Debtor and its assets and, further, requires that the Debtor give its creditors notice of the CCAA proceeding. Further, the CCAA is collective because it is designed to facilitate

8

compromises and arrangements between companies and their creditor. Canadian proceedings commenced under the CCAA provide reasonable assurance of just treatment of all holders of claims by providing a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding.

24. The CCAA provides that the Debtor's assets and affairs are subject to the supervision of the Canadian Court. Upon entry of the Canadian Orders, the Debtor's assets became subject to the supervision of the Canadian Court and the Monitor, an officer of the court that will monitor and report to the Canadian Court the Debtor's activities during the pendency of the Canadian Proceeding. The Canadian Proceeding is being pursued for the purpose of establishing a single forum to ensure the equitable treatment of all claims of equal stature and priority, and disincentivizing parties from racing to courthouses in a myriad of jurisdictions in order to obtain recoveries from a dwindling pool of assets.

25. In its Initial Order, the Canadian Court has ordered a stay of proceedings against ACL, as well as CLMI and their third-party claims administrator Resolute Management Inc. to help ensure a successful process in Canada. It is imperative that this Court enter co-extensive injunctive and provisional relief to prevent interference with the Monitor's restructuring efforts. The purpose of such relief would be to preserve the status quo so that the Debtor has a reasonable chance to undertake a successful reorganization in the Canadian Proceeding, ensuring the streamlined adjudication of claims and equitable distribution of the Debtor's assets. And granting that relief will not bar any parties from participating in or asserting their claims in the Canadian Proceeding.

26. The Canadian Proceeding was initiated with the goal of consolidating all asbestos-related actions against the Debtor in a single forum to ensure consistent treatment for existing and

9

future creditors in the liquidation and collection of their claims. The litigation currently pending in the United States against ACL and CLMI threatens to divert attention and resources away from the centralized Canadian Proceeding. The Debtor's insurance policies comprise the Debtor's primary asset, and the equitable resolution of creditors' claims depends on the Monitor's ability to preserve the proceeds of those insurance policies for equitable distribution through the Canadian Proceeding. Thus, for the Canadian Proceeding to function properly and to provide an efficient forum for the resolution of ACL's liabilities, it is necessary for this Court to stay litigation against ACL and CLMI in the United States. Otherwise, the Canadian Proceeding will do nothing to stop the "race to the courthouse" in the United States that appears to be quickly driving ACL deeper into insolvency.

**V.    No Other Foreign Proceedings**

27.    I believe, to the best of my information and belief, and as identified in the Chaaban Declaration, filed contemporaneously herewith, other than this chapter 15 case, the Canadian Proceeding is the only proceeding related to the adjustment of debts pending for the Debtor and, therefore, is the only "foreign proceeding" with respect to the Debtor within the meaning of section 101(23) of the Bankruptcy Code.

28.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[Signature appearing on next page]*

10

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 6, 2025
      Montréal, Canada

                                              */s/ Alain Tardiff*_____
                                              Alain N. Tardif